IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TREVOR SHOPE,

        Plaintiff,                    No. 2:09-cv-2215 KJN P

      vs.

VIVI JONES, R.N.,                  ORDER AND

        Defendant.            FINDINGS AND RECOMMENDATIONS

_____/

I.  Introduction

        Plaintiff, a state prisoner proceeding without counsel, seeks relief pursuant to

42 U.S.C. § 1983.  This case is proceeding on the amended complaint, filed September 15, 2009.

Plaintiff alleges that defendant Jones was deliberately indifferent to plaintiff's serious medical

needs in connection with plaintiff's illness on June 19, 2009.  (Dkt. No. 8.)  Pending before the

court is defendant Jones' motion for summary judgment.  As explained more fully below, the

court recommends that the motion for summary judgment be granted.

II.  Plaintiff's Allegations

        In the unverified amended complaint, plaintiff alleges:

        1.  On June 19, 2009, at approximately 8:30 p.m., plaintiff allegedly pushed the

emergency button in his cell, and informed the Tower 1 officer that plaintiff is an H.I.V. and

1

1   Hep-C inmate, and was feeling "deathly ill," and "on the verge of falling out."  (Dkt. No. 8 at 1.)

2   Plaintiff allegedly asked the Tower 1 officer to let medical staff know about the serious situation.

3          2.  Plaintiff allegedly pushed the emergency button again at 8:50 p.m. to call "man

4   down."  (Id.)  Plaintiff then allegedly passed out, and when he woke up, he was laying face down

5   with blood on top of his right eye.[1]  Plaintiff allegedly pushed the button again, and by that time,

6   shift change had occurred.

7          3.  Defendant Jones was the R.N. on duty and she allegedly took the call from the

8   Tower 1 officer.  (Id. at 2.)  Plaintiff alleges defendant Jones "decided to put the call off to the

9   next shift," even though defendant Jones is familiar with plaintiff's medical condition.  (Id.)

10          4.  Plaintiff alleges medical staff was summoned to plaintiff's cell at 11:15 p.m.,

11   and despite plaintiff's alleged 104.7 temperature, plaintiff was given two Tylenol and allegedly

12   "left to suffer."  (Id.)  Through that night, plaintiff allegedly went in and out of consciousness.

13   The next morning, plaintiff allegedly spoke with the floor officer, medical was called again, and

14   plaintiff was admitted to the infirmary with a temperature of 103.6.  (Id.)

15          5.  Plaintiff alleges that due to the delay in medical treatment by defendant Jones,

16   plaintiff still suffers from blurred vision, migraine headaches, and seizure-type convulsions that

17   leave plaintiff disoriented and confused.  (Id.)

18          In the grievance appended to the amended complaint, plaintiff stated:

19          On or about 6-19-09 at and between 8:32 pm / 8:55 pm I pushed
       my cell intercom button and let the officer in the tower know that I
20          was F--- up at that moment and that I was shaking & shivering, at
       that moment he started yelling don't call up here saying you're F---
21          up.  I told him at this time I was H.I.V. positive and yes, I needed
       medical attention.  At 8:55 I again pushed my cell intercom button
22          to let this officer know that the shakes were gone.  Now my chest
       felt like it was going to explode and my eyes felt like they were
23          going to pop out of my skull.  I need a man down.  When the
       officer got on the intercom he yelled I already called medical
24          they'll be there and clicked off.  At that moment I blacked out and

25   ─────────────

26          [1]  The appended grievance makes clear that plaintiff's head hit the cell door during this
     second call to the Tower 1 officer.  (Dkt. No. 8 at 4.)

2

1      hit the cell door head first.

2   (Dkt. No. 8 at 4.)  Plaintiff's grievance was summarized as follows:

3          Inmate states that on 06-19-09 at about 2023 he informed the tower
           1 officer that he had an emergency.  He again called the tower at
4          2055 asking for medical attention.  Inmate states that it was not
           until 2315/2320 that he received any medical attention.

5

6   (Dkt. No. 8 at 5.)  The response to plaintiff's grievance stated:

7          In reference to your grievance . . . [dated] 06/21/09 [regarding] the
           tower officer.  The tower officer notified [medical] the first time
8          you called them.  They can not do anything more than that.  It is up
           to medical to then [respond].  As you were pressing the . . . call
9          button and talking with the tower, your situation was not life
           threatening.  Medical did respond as soon as possible.

10

11  (Dkt. No. 8 at 7.)

12         On November 15, 2010, plaintiff filed a motion in which he recounted the events

13  of June 19, 2009, as follows:

14         I informed officer James on 6-19-09 at 8:35 pm after I had pushed
           the call button in my cell that I was sick.  At the same time I also
15         told him I was H.I.V. positive and needed medical attention.  At
           8:55 pm I pushed the call button again to call a man down.  Officer
16         James came over the call box and stated I already called the nurse
           (he had an attitude and was yelling this at me).  I then once again
17         told him man down.  That's when I blacked out hitting my head on
           the door frame in my cell.  I did not wake up or get back up until
18         11:15 pm after a shift change had taken place.

19  (Dkt. No. 30 at 2.)

20  III.  Motion for Summary Judgment

21         Defendant Jones moves for summary judgment on the grounds that there are no

22  genuine issues of material facts and she is entitled to judgment as a matter of law.  Plaintiff filed

23  an opposition, and defendant filed a reply.

24         A.  Legal Standard for Summary Judgment

25         Summary judgment is appropriate when it is demonstrated that the standard set

26  forth in Federal Rule of Civil procedure 56 is met.  "The court shall grant summary judgment if

3

1  the movant shows that there is no genuine dispute as to any material fact and the movant is

2  entitled to judgment as a matter of law. " Fed. R. Civ. P. 56(a).[2]

3  > Under summary judgment practice, the moving party always bears
>  the initial responsibility of informing the district court of the basis

4  > for its motion, and identifying those portions of "the pleadings,
>  depositions, answers to interrogatories, and admissions on file,

5  > together with the affidavits, if any," which it believes demonstrate
>  the absence of a genuine issue of material fact.

6

7  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P.

8  56(c).)  "Where the nonmoving party bears the burden of proof at trial, the moving party need

9  only prove that there is an absence of evidence to support the non-moving party's case." Nursing

10  Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376,

11  387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 Advisory

12  Committee Notes to 2010 Amendments (recognizing that "a party who does not have the trial

13  burden of production may rely on a showing that a party who does have the trial burden cannot

14  produce admissible evidence to carry its burden as to the fact").  Indeed, summary judgment

15  should be entered, after adequate time for discovery and upon motion, against a party who fails to

16  make a showing sufficient to establish the existence of an element essential to that party's case,

17  and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322.

18  "[A] complete failure of proof concerning an essential element of the nonmoving party's case

19  necessarily renders all other facts immaterial." Id. at 323.

20  Consequently, if the moving party meets its initial responsibility, the burden then

21  shifts to the opposing party to establish that a genuine issue as to any material fact actually exists.

22  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting

23  to establish the existence of such a factual dispute, the opposing party may not rely upon the

24

25      [2] Federal Rule of Civil Procedure 56 was revised and rearranged effective December 10,
2010.  However, as stated in the Advisory Committee Notes to the 2010 Amendments to Rule

26  56, "[t]he standard for granting summary judgment remains unchanged."

1    allegations or denials of its pleadings, but is required to tender evidence of specific facts in the

2    form of affidavits, and/or admissible discovery material in support of its contention that such a

3    dispute exists.  See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party

4    must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

5    of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

6    (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

7    1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

8    return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

9    1436 (9th Cir. 1987) overruled on other grounds by Hollinger v Titan Capital Corp., 914 F.2d

10   1564, 1575 (9th Cir. 1990).

11          In the endeavor to establish the existence of a factual dispute, the opposing party

12   need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

13   claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

14   versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary

15   judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

16   genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

17   committee's note on 1963 amendments).

18          In resolving a summary judgment motion, the court examines the pleadings,

19   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

20   any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

21   477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

22   court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

23   Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

24   produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

25   Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

26   1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

1   show that there is some metaphysical doubt as to the material facts. . . . Where the record taken

2   as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

3   'genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

4           By order filed November 17, 2009, the court advised plaintiff of the requirements

5   for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.

6   (Dkt. No. 11); see Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v.

7   Eikenberry, 849 F.2d 409 (9th Cir. 1988).

8                   B.  Undisputed Facts

9           For purposes of the instant motion for summary judgment, the court finds the

10  following facts undisputed.

11          1.  Plaintiff was in the custody of the Solano County Jail, Fairfield, California, on

12  June 19, 2009.

13          2.  Defendant Jones is a licensed Registered Nurse, employed by the California

14  Forensic Medical Group which provides health care for the Solano County Jail.  Defendant Jones

15  began work as a nurse at the Solano County Jail in 1991, and was on duty the evening of June 19,

16  2009.

17          3.  Plaintiff has H.I.V.

18          4.  During the evening of June 19, 2009, plaintiff became ill while locked in his

19  cell.

20          5.  Plaintiff used the call button in his cell to notify the Tower 1 officer that

21  plaintiff needed medical attention.

22          6.  Twenty minutes later, no medical personnel had arrived, so plaintiff called the

23  Tower 1 officer again.  The Tower 1 officer informed plaintiff that medical was summoned after

24  plaintiff's first call.

25          7.  On June 19, 2009, defendant Jones received a telephone call from a tower

26  officer reporting that plaintiff "was not feeling well."  (Dkt. No. 40 at 1.)  Defendant Jones

1  declares that the officer did not include any reference to an emergency situation or that there was a

2  "man down."  (Id.)

3         8.  On June 19, 2009, at or about the time of the call from the tower officer

4  concerning plaintiff, defendant Jones received a call from the booking desk officer, who stated

5  that a prospective new admittee to the jail needed immediate attention.  (Dkt. No. 40 at 2.)

6         9.  Based on the information provided by the two phone calls, defendant Jones

7  determined that she should first evaluate the new admittee because the new admittee had a

8  medical history and condition that had not yet been assessed and needed to be checked, and

9  plaintiff's complaint of "not feeling well" could be addressed when defendant Jones finished with

10  the new admittee, or by the incoming medical staff.

11        10.  DeAnn Robbins, R.N., evaluated plaintiff at 11:40 p.m. on June 19, 2009, after

12  receiving a phone call report that plaintiff was "not feeling well."  (Dkt. No. 41-1 at 3.)  Robbins

13  noted:

14              [Inmate] sat up, very cooperative, states earlier was not feeling well,
            felt cold, chills, diaphoretic.  States feeling better now but wanted to

15              be checked out by medical.  Denies [nausea/vomiting/diarrhea],
            denies body aches.

16

17  (Id.)  Robbins' notes reflect plaintiff's vitals were:  blood pressure 130/80, temperature 101.3.

18  "Diaphoresis noted at this time.  [Plaintiff's] hands/arms feel cool to touch."  (Id.)  Plaintiff

19  complained of a headache behind his eyes which was dull earlier, but better now.  (Id.)

20  R.N. Karina Purcell provided a declaration in which she confirmed that pursuant to standardized

21  protocol for nurses, Robbins provided plaintiff Tylenol for the headache and advised plaintiff to

22  increase his fluid intake.  (Dkt. No. 41 at 2.)

23        11.  During the administrative grievance process, Sgt. Jorgensen determined

24  plaintiff's situation was not life threatening because plaintiff was pressing the call button and

25  talking with the tower.  (Dkt. No. 8 at 7.)

26  ////

1          C.  Eighth Amendment Legal Standard

2          It is unclear whether plaintiff was a pretrial detainee at the time of the incident.

3   Although the Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment's

4   protection against cruel and unusual punishment, applies to pretrial detainees," courts apply the

5   same standard in both cases.  Simmons v. Navajo County, 609 F.3d 1011, 1017 (9th Cir. 2010).

6   Generally, deliberate indifference to a serious medical need presents a cognizable claim for a

7   violation of the Eighth Amendment's prohibition against cruel and unusual punishment.  Estelle

8   v. Gamble, 429 U.S. 97, 104 (1976).  According to Farmer v. Brennan, 511 U.S. 825, 847 (1994),

9   "deliberate indifference" to a serious medical need exists "if [the prison official] knows that [the]

10  inmate [ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take

11  reasonable measures to abate it."  The deliberate indifference standard "is less stringent in cases

12  involving a prisoner's medical needs than in other cases involving harm to incarcerated

13  individuals because 'the State's responsibility to provide inmates with medical care ordinarily

14  does not conflict with competing administrative concerns.'"  McGuckin v. Smith, 974 F.2d 1050,

15  1060 (9th Cir. 1992) (quoting Hudson v. McMillian, 503 U.S. 1, 6 (1992)), overruled on other

16  grounds by WMX Technologies, Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997).  Specifically, a

17  determination of "deliberate indifference" involves two elements:  (1) the seriousness of the

18  prisoner's medical needs; and (2) the nature of the defendant's responses to those needs.

19  McGuckin, 974 F.2d at 1059.

20          First, a "serious" medical need exists if the failure to treat a prisoner's condition

21  could result in further significant injury or the "unnecessary and wanton infliction of pain."  Id.

22  (citing Estelle, 429 U.S. at 104).  Examples of instances where a prisoner has a "serious" need for

23  medical attention include the existence of an injury that a reasonable doctor or patient would find

24  important and worthy of comment or treatment; the presence of a medical condition that

25  significantly affects an individual's daily activities; or the existence of chronic and substantial

26  pain.  McGuckin, 974 F.2d at 1059-60 (citing Wood v. Housewright, 900 F.2d 1332, 1337-41 (9th

1 Cir. 1990)).

2        Second, the nature of a defendant's responses must be such that the defendant

3 purposefully ignores or fails to respond to a prisoner's pain or possible medical need in order for

4 "deliberate indifference" to be established.  McGuckin, 974 F.2d at 1060.  Deliberate indifference

5 may occur when prison officials deny, delay, or intentionally interfere with medical treatment, or

6 may be shown by the way in which prison physicians provide medical care."  Hutchinson v.

7 United States, 838 F.2d 390, 392 (9th Cir. 1988).  In order for deliberate indifference to be

8 established, there must first be a purposeful act or failure to act on the part of the defendant and

9 resulting harm.  See McGuckin, 974 F.2d at 1060.  "A defendant must purposefully ignore or fail

10 to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be

11 established."  Id.  Second, there must be a resulting harm from the defendant's activities.  Id.  The

12 needless suffering of pain may be sufficient to demonstrate further harm.  Clement v. Gomez, 298

13 F.3d 898, 904 (9th Cir. 2002).

14        Mere differences of opinion concerning the appropriate treatment cannot be the

15 basis of an Eighth Amendment violation.  Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996);

16 Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).  However, a physician need not fail to

17 treat an inmate altogether in order to violate that inmate's Eighth Amendment rights.  Ortiz v. City

18 of Imperial, 884 F.2d 1312, 1314 (9th Cir. 1989).  A failure to competently treat a serious medical

19 condition, even if some treatment is prescribed, may constitute deliberate indifference in a

20 particular case.  Id.

21        In order to defeat defendants' motion for summary judgment, plaintiff must

22 "produce at least some significant probative evidence tending to [show]," T.W. Elec. Serv., 809

23 F.2d at 630, that defendants' actions, or failures to act, were "in conscious disregard of an

24 excessive risk to plaintiff's health," Jackson v. McIntosh, 90 F.3d at 332 (citing Farmer, 511 U.S.

25 at 837).

26 ////

1          D.  Analysis

2          Plaintiff contends that on June 19, 2009, he first called the Tower 1 officer at 8:35

3  p.m., and called again at 8:55 p.m.  Defendant Jones filed a declaration stating that on June 19,

4  2009, at or about 10:00 p.m., she received a call from the tower officer concerning plaintiff.

5  Plaintiff provided no substantive evidence to refute defendant Jones' time frame, or to support

6  plaintiff's alleged time frame.  None of the filings by plaintiff, including the amended complaint,

7  were signed under penalty of perjury.  Plaintiff provided no witness statements, call logs, or other

8  probative evidence to verify the times plaintiff alleges he contacted the Tower 1 officer.

9          Moreover, plaintiff adduced no probative evidence as to what the Tower 1 officer

10  told defendant Jones when relaying plaintiff's request for medical attention.  Although plaintiff

11  claims he informed the Tower 1 officer that plaintiff was "deathly ill" and plaintiff called for

12  "man down," plaintiff provided no probative evidence demonstrating that the Tower 1 officer

13  relayed this message to defendant Jones.  Defendant Jones provided a declaration stating that the

14  Tower officer called her at or about 10:00 p.m. and told her that plaintiff "was not feeling well."

15  (Dkt. No. 40 at 1.)  Plaintiff provided no declaration by the Tower 1 officer or other witness

16  refuting defendant Jones' declaration, or setting forth what information was relayed by the Tower

17  1 officer to defendant Jones.  Plaintiff provided no documentary evidence demonstrating that a

18  "man down" was called by the Tower 1 officer on behalf of plaintiff on June 19, 2009.  Because

19  plaintiff failed to refute the information the Tower 1 officer relayed to defendant Jones, plaintiff

20  cannot demonstrate that defendant Jones was deliberately indifferent to plaintiff's serious medical

21  needs.

22          Plaintiff claims that because of defendant Jones' failure to respond to plaintiff's

23  calls to the Tower 1 officer on June 19, 2009, plaintiff suffered major migraine headaches, and

24  blurred vision with a constant pressure behind his eyes.  (Dkt. No. 45-1 at 2.)  However, plaintiff

25  provided no probative evidence demonstrating that it was the failure of defendant Jones to

26  respond that caused these medical problems.

1         Finally, plaintiff failed to show that defendant Jones' action in deciding to treat the

2 new admittee first, before providing medical care for plaintiff, was deliberately indifferent to

3 plaintiff's serious medical needs.  As noted above, plaintiff failed to refute defendant Jones'

4 testimony that the Tower officer informed defendant Jones that plaintiff was not feeling well.

5 Because defendant Jones was the only R.N. on duty (dkt. no. 30 at 11), defendant Jones

6 determined whether to treat plaintiff, an inmate with whom defendant Jones had some prior

7 contact at the jail (dkt. no. 30 at 6), or the new admittee.  The booking desk officer told defendant

8 Jones that the new admittee "needed immediate attention," and the new admittee's medical history

9 was unknown.  (Dkt. No. 40 at 2.)  Plaintiff provided no probative evidence to demonstrate that

10 defendant Jones' decision to evaluate the new admittee first was deliberately indifferent or even

11 violated the standard of care for nursing professionals.  Indeed, the evidence demonstrates that

12 defendant Jones wasn't aware of plaintiff's illness until around 10:00 p.m.,[3] and was only

13 informed that plaintiff "wasn't feeling well."  In light of this unrefuted evidence, defendant Jones'

14 action in treating the new admittee before plaintiff does not constitute deliberate indifference.

15 The record demonstrates that plaintiff received medical treatment at 11:40 p.m. that same day.

16         While the court is sympathetic to plaintiff's subsequent medical problems, the

17 record does not provide any evidence suggesting it was defendant Jones' failure to treat plaintiff

18 that caused plaintiff's subsequent medical problems, or that it was the delay of one hour, 40

19 minutes, or the alleged delay of up to 3 hours and 10 minutes, that caused or contributed to

20

21

---

22     [3] The court is concerned that medical records reflect that defendant Jones inserted a "late
entry" for June 19, 2009, at "2200" (10:00 p.m.), stating "Called for [inmate]; also called to
23 intake.  Will pass on to next shift for [illegible]."  (Dkt. No. 41-1 at 4.)  Defendant Jones did not
explain why a late entry was required.  Defendant Jones did not explain why the late entry wasn't
24 inserted between the June 19, 2009 entry and the first June 20, 2009 entry (dkt. no. 41-1 at 3), or
before defendant Jones' first June 20, 2009 entry (dkt. no. 41-1 at 4).  However, because
25 defendant Jones provided a declaration attesting to the events of June 19, 2009, and plaintiff
failed to refute the declaration with probative evidence, the late entry is not material to the
26 resolution of the pending motion.

1 plaintiff's subsequent medical issues.[4]  Plaintiff adduced no evidence to demonstrate that on June

2 19, 2009, plaintiff suffered from an acute medical ailment that required immediate medical

3 attention.  Plaintiff provided no probative evidence refuting Sgt. Jorgensen's finding that

4 plaintiff's situation was not life threatening.  (Dkt. No. 8 at 7.)  A delay of several days in

5 receiving pain medication for a broken shoulder did not amount to an Eighth Amendment

6 violation.  Wood, 900 F.2d at 1333-35.  Here, plaintiff received Tylenol for his headache at least

7 within a matter of hours.  Therefore, even if the alleged delay caused plaintiff pain, the delay

8 would not constitute an Eighth Amendment violation.

9        For all of the above reasons, plaintiff failed to carry his burden to demonstrate that

10 there are genuine disputes as to any material fact by presenting plaintiff's own affidavits, or the

11 depositions, answers to interrogatories, or other discovery responses demonstrating there are

12 specific facts showing that a genuine issue of material fact remains disputed for trial.  Celotex,

13 477 U.S. at 324.  There is nothing in the record beyond plaintiff's unverified allegations to

14 support plaintiff's version of what defendant Jones did or did not do.  Plaintiff presented no

15 declarations or other evidence, nor requested a continuance to gather such evidence, to support his

16 version of the events.  As a result, plaintiff has not created a genuine issue of material fact as to

17 his claim against defendant Jones, and defendant Jones is entitled to summary judgment.

18        E.  Conclusion

19        In accordance with the above, IT IS HEREBY ORDERED that the Clerk of the

20 Court is directed to assign a district judge to this case; and

21        IT IS HEREBY RECOMMENDED that the March 11, 2011 motion for summary

22 judgment (dkt no. 39) be granted, and this action be dismissed with prejudice.

23 ////

24

---

25     [4]  To the contrary, the undisputed facts above (see Undisputed Fact ¶ 10) establish that
when plaintiff was seen by a nurse on June 19, 2009, at 11:40 p.m., his condition was not life
26 threatening.

1    These findings and recommendations are submitted to the United States District

2  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

3  one days after being served with these findings and recommendations, any party may file written

4  objections with the court and serve a copy on all parties.  Such a document should be captioned

5  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

6  objections shall be filed and served within fourteen days after service of the objections.  The

7  parties are advised that failure to file objections within the specified time may waive the right to

8  appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

9  DATED:  August 11, 2011

10

11  _____
                KENDALL J. NEWMAN
12              UNITED STATES MAGISTRATE JUDGE

13  shop2215.msj

14

15

16

17

18

19

20

21

22

23

24

25

26